**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**SANDRA MARTINEZ,**

***Plaintiff*,**

**v.** **Case No. 5:25-CV-01297-JKP**

**TEXAS DEPARTMENT OF TRANS-PORTATION, NTT DATA SERVICES LLC,**

***Defendants*.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are two Motions to Dismiss, filed by Defendants Texas Department of Transportation and NTT Data Services LLC, respectively. *ECF Nos. 49*, *52*. The two Motions are fully briefed and therefore ripe for ruling. *See ECF Nos. 51*, *54*, *55*, *58*, *59*, *60, 61*. After a careful review, the Court will grant the two Motions, (*ECF Nos. 49*, *52*).

**BACKGROUND**

This case arises out of Plaintiff Sandra Martinez's ("Martinez") former employment with Defendants Texas Department of Transportation ("TxDOT") and NTT Data Services LLC ("NTT"). *See*, *generally*, *ECF No. 40*. Per Martinez, who proceeds *pro se*, "[t]his action is brought pursuant to Title VII of the Civil Rights Act of 1964 for discrimination and retaliation." *Id*. at 1. Specifically, Martinez alleges Defendants subjected her to disparate treatment, harassment, and retaliation on the job. *Id*. at 1–2. Martinez further alleges she signed a Severance Agreement under duress and that the Severance Agreement is void because it contains unlawful provisions. *Id*. at 2. Martinez requests the Court declare the Severance Agreement void and award her damages for "emotional distress," "malicious stalking," and "witness intimidation."

*Id*. at 2–3.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and possess "'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). For that reason, a federal court must dismiss a case for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

A motion filed under Federal Rule 12(b)(1) allows a party to challenge a court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). The burden of proof for a Federal Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001); *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980)

### II. Federal Rule of Civil Procedure 12(b)(6)

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id*. When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones*, 188 F.3d at 324).

## ANALYSIS

### I. NTT Data Services LLC's ("NTT") Motion to Dismiss

NTT moves to dismiss Martinez's First Amended Complaint, arguing that Martinez "knowingly and voluntarily executed a Severance and Release Agreement [("the Severance

Agreement")] barring all claims arising out of her employment and/or termination of employment with [NTT]" and that Martinez's duress allegations are conclusory. *ECF No. 49* at 1. Martinez filed two Responses, (*ECF Nos. 55, 58*), claiming that—because of two decisions by the National Labor Relations Board ("NLRB")—the Severance Agreement is "unlawful and unenforceable." *See id*. Martinez further reasserts her claims to have signed the Severance Agreement under duress. *See id*. NTT filed a Reply, (*ECF No. 59*), stating the NLRB decisions are inapplicable. Thereafter, Martinez requested leave to file a Surreply, (*ECF No. 61*), which the Court granted as unopposed.

### A. Release of Federal Claims

The release of federal claims is governed by federal law. *Rogers v. Gen. Elec. Co.,* 781 F.2d 452, 454 (5th Cir. 1986). Public policy favors voluntary settlement of claims and enforcement of releases. *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir. 1994). However, a release of an employment or employment discrimination claim is valid only if it is "knowing" and "voluntary." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15 (1947). Once a party establishes that the plaintiff signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the plaintiff has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. *Williams,* 23 F.3d at 935. The court must then "examine the totality of circumstances to determine whether the releaser has established an appropriate defense." *O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1017 (5th Cir. 1990).

Here, the Court may consider the Severance Agreement because Martinez referred to it in her First Amended Complaint and it is central to her claims. *See ECF No. 40*. NTT attaches the

Severance Agreement to its Motion to Dismiss, and the Court reproduces the relevant portions of the Severance Agreement immediately below.

> 7. You acknowledge that you are not otherwise entitled to the severance pay described in section 6 above. You agree that the receipt of this severance pay is in full satisfaction of any claims, liabilities, demands or causes of action of any sort that you have had in the past or currently may have against NTT DATA or any of its affiliated companies, directors, officers, agents or employees. Any such claims under federal, state, or local law, whether for discrimination or harassment (**including claims under Title VII of the Civil Rights Act of 1964**, the federal Age Discrimination in Employment Act (29 U.S.C. section 621 et seq.), the Americans with Disabilities Act, the Family Medical Leave Act), breach of contract, wrongful termination, retaliation, bad faith, infliction of emotional distress, misrepresentation, or any other claims of any kind or nature, are hereby released to the fullest extent permitted by law. You agree and promise that you will not file any lawsuit or charge asserting any such claims.
>
> 8. You understand that various federal, state and local laws prohibit age, sex, national origin, disability, race and other forms of employment discrimination, and that these laws are enforced through the U.S. Equal Employment Opportunity Commission, and similar state and local agencies. This agreement recognizes the rights and responsibilities of the Equal Employment Opportunity Commission ("EEOC") and the applicable state or local agency to enforce the statutes which come under their jurisdiction. This agreement is not intended to prevent you from initiating or participating in any investigation or proceeding conducted by the EEOC or the applicable state or local agency; provided, however, that nothing in this section limits or affects the finality or the scope of the Release set forth in section 7 above. If you believed that your treatment by NTT DATA had violated any of these anti-discrimination laws, you understand that you could consult with these agencies and file a charge with them. Instead, you have voluntarily decided to accept NTT DATA's severance offer, and to waive and release the claims, if any, that you may have under such laws; and you acknowledge that you may not recover damages in any proceeding conducted or pursued by the EEOC or the applicable state or local agency.
>
> 9. Except as required by law, you and NTT DATA agree not to disclose the terms or existence of this agreement, or that you received any payments in consideration for this agreement to any NTT DATA employee (except those with a need to know for the performance of their employment duties) or other person except your attorney, your financial advisor, your personal advisors (excluding any NTT DATA employee), the IRS or other taxing authorities, or your immediate family (your "agents"). If you do disclose the terms of this agreement to your agents, you will advise them that they must keep those terms confidential.

*ECF No. 49-1* at 1–2 (emphasis added). The Court notes that Martinez concedes she signed the Severance Agreement, the Severance Agreement explicitly addresses Title VII claims like those brought in this case, and Martinez does not allege she failed to receive adequate consideration or that she rejected or returned any such consideration. *Id*; *ECF No. 40*. Thus, Martinez has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. *Williams,* 23 F.3d at 935.

**B. National Labor Relations Board ("NLRB") Decisions**

Responding to NTT's Motion to Dismiss, Martinez relies on two NLRB decisions to argue the Severance Agreement is unenforceable. *ECF Nos. 55, 58* (citing *Mclaren Macomb*, 372 NLRB No. 58 (N.L.R.B. Feb. 21, 2023) *and NTT Data Americas, Inc. and Steven D. Melcher, Jr., an Individual*, 07-CA-320089, 2024 WL 4474952 (N.L.R.B. Div. of Judges Oct. 10, 2024)). Martinez, however, does not analyze the terms of any provision in the Severance Agreement to explain why the provision would fall within the proscription described in *McLaren Macomb* and expanded upon in *Melcher*. *See ECF Nos. 55, 58*; *e.g.*, *Riley v. QuantumScape Corp.*, No. 22-CV-03871, 2023 WL 5279810, at *3 (N.D. Cal. Aug. 15, 2023). This is particularly troubling given the NLRB's emphasis on the importance of the terms of the agreement. *See McLaren Macomb*, 372 N.L.R.B. No. 58, at *11 ("Our main disagreement with the dissent's adherence to *Baylor* and *IGT* is the refusal in those cases to analyze the terms of the severance agreements."); *see also id.* at *5 (stating that in determining whether a severance agreement is unlawful "we will examine . . . the language of the agreement"). Moreover, Martinez does not explain why this Court should follow the NLRB's non-binding decisions. *Riley*, 2023 WL 5279810, at *3.

The confidentiality language in the agreements at issue in *McLaren Macomb* and *Melcher* is distinguishable. In *McLaren Macomb*, the NLRB held an employer violated the National Labor Relations Act ("NLRA") by offering employees a separation agreement containing "overly broad" non-disparagement and confidentiality clauses. *Doheny v. Intl. Bus. Machines, Corp.*, 714 F. Supp.3d 342, 368 (S.D.N.Y. 2024) (citing *McLaren Macomb*, 372 N.L.R.B. No. 58, at *1, *8). It reasoned that the employer violated the NLRA because proffering such an agreement had a "reasonable tendency to interfere with, restrain, or coerce" the prospective exercise of employees' rights under Section 7 of the NLRA. *Id.* (citing *McLaren Macomb*, 372 N.L.R.B. No. 58, at *10). Specifically, the NLRB found the language "broadly prohibited [employees] from making statements that could disparage or harm the image of the [employer] and further prohibited them from disclosing the terms of the [severance] agreement." *Id*. (citing *McLaren Macomb*, 372 N.L.R.B. No. 58, at *1). The confidentiality language in the Severance Agreement at issue here is narrower in scope. *Doheny*, 714 F. Supp.3d at 368. Additionally, the confidentiality language does not broadly prohibit disparaging statements. *Id*. The Court notes that even if the confidentiality language violated the NLRA, the proper remedy would simply be to sever the provision from the Severance Agreement, rather than to deem the entire Agreement invalid. *Id*. Both case law and the NLRB favor severing a violative contractual provision.[1]

For these reasons, the Court finds Martinez's invocation of *McLaren Macomb* and *Melcher* unpersuasive.

### C. Duress Allegations

---

[1] *See Doheny v. Intl. Bus. Machines, Corp.*, 714 F. Supp.3d 342, 368 (S.D.N.Y. 2024); *see* Nat'l Lab. Rels. Bd., GC 23-05, Guidance in Response to Inquiries About the *McLaren Macomb* Decision 3–4 (2023), https://www.nlrb.gov/ne ws-outreach/news-story/nlrb-general-counsel-issues-memo-with-guidance-to-regions-on-severance; *see also* Nat'l Lab. Rels. Bd., GC 25-05, Rescission of Certain General Counsel Memoranda, https://www.nlrb.gov/news-outreach/news-story/nlrb-general-counsel-issues-memo-with-guidance-to-regions-on-severance.

Responding to NTT's Motion to Dismiss, regarding duress, Martinez reasserts allegations contained in her Amended Complaint that she signed the Severance Agreement "under extreme distress while her stepfather was dying of Stage 4 cancer" and does not address NTT's arguments.[2] *ECF No. 58* at 1–2.

As stated above, "[i]n determining whether a release was knowingly and voluntarily executed, [the Fifth Circuit] has adopted a 'totality of the circumstances' approach." *Preston*, 2006 WL 757960 at *3 (internal citations omitted). Under this approach, the moving party has the burden of "establish[ing] that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release . . . ." *Id*. Once this is established, "the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.* The following six factors ("the *O'hare* factors") are relevant to determine whether the employee has met the burden of establishing a defense to the validity of the release:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

[2] In its Motion to Dismiss, NTT argues Martinez's duress allegations are conclusory. *ECF No. 49* at 6–10. NTT cites authority, including Fifth Circuit case law, for the proposition that:

> In order to establish duress as an affirmative defense to a contract, plaintiff must show that there is (1) "a threat to do some act which the party threatening has no legal right to do," (2) "some illegal exaction or some fraud or deception," and (3) "the restraint must be imminent and such as to destroy free agency without present means of protection."

*Preston v. Pegasus Sols., Inc.*, No. 3:04-CV-1924, 2006 WL 757960, at *4 (N.D. Tex. Mar. 23, 2006) (citing *Lee v. Hunt,* 631 F.2d 1171, 1178 (5th Cir.1980)). In response to Martinez's claims "Defendants threatened to block her unemployment benefits if she did not sign" the Severance Agreement, NTT further argues that pursuant to Texas Labor Code § 208.004 a notified employer is required to promptly provide facts that may affect an unemployment compensation claimant's eligibility. *ECF No. 40* at 2; *ECF No. 49* at 8. The Court notes Martinez's allegation regarding unemployment benefits is not directed toward a specific named Defendant.

*Id*. "No single factor is necessarily dispositive in this analysis." *Id*.

While the Court understands and sympathizes with Martinez regarding her stepfather's medical condition, and the emotional and physical toll that may have taken on her, she has failed to make a showing of duress. Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue. *See Slaughter v. Torres*, 592 F. Supp.3d 515, 530 (M.D. La. 2022) (collecting cases). Martinez ignores NTT's arguments regarding duress that it puts forth in its Motion to Dismiss and fails to offer any authority, argument, or explanation. Martinez proceeds *pro se*, however, therefore the Court is reluctant to find Martinez abandoned her duress claims.

Still, examining the Severance Agreement leads the Court to the same conclusion. Martinez alleges being terminated "[o]n November 16, 2023," and the Severance Agreement is dated and signed December 6, 2023. *ECF No. 40* at 2; *ECF No. 49-1*. The Severance Agreement reads in part:

> - This document is important. You should review it carefully and, if you agree to it, sign and date it in the space indicated.
> - You have up to 21 calendar days (through the close of business on (December 27, 2023) to decide whether to sign this agreement. This period is designed to allow you to consult a financial advisor, accountant, attorney, or anyone else whose advice you need. You should consult appropriate advisors, including an attorney, during this time period.
> - After signing this agreement, you have seven (7) calendar days to revoke it. Any revocation should be in writing and delivered to HR@nttdata.com by the end of the seventh day after you have signed the agreement.
> - This agreement will not become effective or enforceable until the seven-day revocation period has passed. With the exception of regular salary and accrued vacation, no benefits described herein will be paid until the expiration of the revocation period.

*Id*.

Examining the totality of the circumstances in light of the *O'hare* factors, the reasonable conclusion is Martinez knowingly and willfully entered into the Severance Agreement. Martinez has litigated this case, demonstrating her ability to navigate legal issues. The Severance Agreement advised her "to consult a financial advisor, accountant, attorney, or anyone else whose advice you need." *ECF No. 49-1* at 2. Although it appears she signed the Severance Agreement the same day, Martinez had "up to 21 calendar days (through the close of business on [] December 27, 2023) to decide whether to sign," plus a seven-day revocation period. *Id*. The Severance Agreement uses plain language, not technical jargon. Reproduced immediately below, the Severance Agreement also specifically addresses Title VII as well.

7. You acknowledge that you are not otherwise entitled to the severance pay described in section 6 above. You agree that the receipt of this severance pay is in full satisfaction of any claims, liabilities, demands or causes of action of any sort that you have had in the past or currently may have against NTT DATA or any of its affiliated companies, directors, officers, agents or employees. Any such claims under federal, state, or local law, whether for discrimination or harassment (including claims under Title VII of the Civil Rights Act of 1964, the federal Age Discrimination in Employment Act (29 U.S.C. section 621 et seq.), the Americans with Disabilities Act, the Family Medical Leave Act), breach of contract, wrongful termination, retaliation, bad faith, infliction of emotional distress, misrepresentation, or any other claims of any kind or nature, are hereby released to the fullest extent permitted by law. You agree and promise that you will not file any lawsuit or charge asserting any such claims.

*Id*. For these reasons, the Court finds Martinez has not met her burden of establishing a defense to the validity of the release. *Mata v. Expedia Group, Inc*., No. 1:25-CV-00004, 2025 WL 2490474, at *3 (W.D. Tex. Aug. 7, 2025), *R. & R. adopted*, No. 1:25-CV-00004, 2025 WL 2487351 (W.D. Tex. Aug. 28, 2025). Accordingly, the Court will grant NTT's Motion to Dismiss, (*ECF No. 49*), on the basis of NTT's arguments. *E.g.*, *Mata*, 2025 WL 2490474; *Sprague v. Kroger Texas, LP*, No. 4:17-CV-00874, 2019 WL 885236 (N.D. Tex. Feb. 5, 2019), *R. & R. adopted*, No. 4:17-CV-00874, 2019 WL 859686 (N.D. Tex. Feb. 22, 2019).

## II. Texas Department of Transportation's ("TxDOT") Motion to Dismiss

TxDOT moves to dismiss Martinez's First Amended Complaint, arguing the Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and, in the alternative, that Martinez fails to state claims for discrimination and retaliation on the basis of Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *ECF No. 52*. Martinez filed a Response, (*ECF No. 54*), to which TxDOT filed a Reply, (*ECF No. 60*). Thereafter, Martinez requested leave to file a Surreply, (*ECF No. 62*), which the Court granted as unopposed.

**A. Employer-Employee Relationship**

TxDOT first argues an employer-employee relationship never existed; therefore, the Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1). *ECF No. 52*. TxDOT cites Martinez's initial Complaint wherein Martinez alleged only being employed by NTT. *See ECF No. 6*.

> An employer-employee relationship is required under Title VII. *Foster v. Hall*, 54 Fed. Appx. 794, 2002 WL 31845208, at *1 (5th Cir. 2002) (citing 42 U.S.C. §§ 2000e–2(a), 2000e–5). The Supreme Court has interpreted the definition of "employee" under Title VII, finding that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine. A*rbaugh*, 380 F.3d at 226 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)). Accordingly, the Fifth Circuit applies the "economic realities/common law control test" to determine whether a party is an employee in an employer-employee relationship. *Juino*, 717 F.3d at 434 (citing *Diggs v. Harris Hosp.–Methodist, Inc.*, 847 F.2d 270, 272 (5th Cir. 1988)).
>
> "The 'hybrid economic realities/common law control test' is necessarily a fact-specific inquiry . . . typically applied in a summary judgment context." *Muhammad*, 479 F.3d at 382 (citing *McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir. 1972)). Additionally, one way to "effectively bypass" the requirement of proving an employment relationship existed is for the plaintiff to prove that the defendant in question is sufficiently interrelated with another defendant, so that they together should be considered either a "single employer" or "joint employers." *Karagounis*, 1999 WL 25015, at *2 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 403–04 (5th Cir. 1983); *Boire v. Greyhound Corp.*, 376 U.S. 473 (1964)).

*McCorvey v. U. of Texas Health Sci. Ctr. at San Antonio*, No. 5:16-CV-00631, 2016 WL 8904949, at *16 (W.D. Tex. Dec. 21, 2016).

Martinez need not have pled sufficient facts to satisfy the "economic realities/common law control test" at this stage of proceedings and, regardless, the Court notes TxDOT fails to address the test. The allegations at this stage are presumed to be true. *Id*. In her Amended Complaint, Martinez states "[a]t all times relevant, TxDOT and NTT data acted as Joint Employers. TxDOT exercised "substantial direct and immediate control over [Martinez]." *ECF No. 40* at 1. Martinez therefore sufficiently alleges in the pleading an employment relationship for her Title VII causes of action, especially since the Fifth Circuit notes the "economic realities/common law control test" is more appropriately applied at summary judgment. *See Muhammad v. Dallas Cnty. Community Supervision and Corrections Dept*., 479 F.3d 377, 382 (5th Cir. 2007).

Accordingly, the Court will deny NTT's Motion to Dismiss, (*ECF No. 49*), on the basis of Federal Rule of Civil Procedure 12(b)(1).

**B. Failure to State a Claim**

TxDOT next argues Martinez fails to state claims for discrimination and retaliation on the basis of Rule 12(b)(6). Responding to TxDOT's Motion to Dismiss, Martinez alleges for the first time she was treated differently than a "direct comparator" she identifies as "Alannah Rodriguez." *ECF No. 54* at 1–2. Martinez also mentions an "ADA claim," but the Court notes Martinez does not assert a cause of action under the Americans with Disabilities Act in her First Amended Complaint. *See ECF No. 40*.

**1. Title VII Discrimination**

Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To state a discrimination claim under Title VII, a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation modified) (emphasis in original). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Id.* at 767 (emphasis in original). "If a plaintiff's disparate treatment claim depends on circumstantial evidence, [s]he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, [the Fifth Circuit has] said that it can be 'helpful to reference' that framework."[3] *Id.* at 767 (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470–71 (5th Cir. 2016)).

Martinez includes the following allegations in her First Amended Complaint:

> II. STATEMENT OF FACTS
>
> 4. Discriminatory Environment: Starting in June 2023, Plaintiff was subjected to disparate treatment. While male employees were provided TxDOT transportation, Plaintiff was forced to use her own vehicle/gas. Plaintiff was singled out for hazardous manual labor (moving 200lb power units) not required of male IT staff.
>
> 5. The Motive: After Plaintiff disclosed personal knowledge regarding the family history of Director Will McLane, McLane and his spouse coordinated to "get rid of" Plaintiff to suppress this information.

[3] If a plaintiff is relying on circumstantial evidence, she would ultimately have to show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group" under the *McDonnell Douglas* framework. *Ernst v. Methodist Hosp. System*, 1 F.4th 333, 339 (5th Cir. 2021) (citation modified); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

> 6. Harassment & Bias: Director Will McLane exhibited overt bias, using homophobic slurs and accusing Plaintiff of a "lesbian relationship" with a witness, Rosalinda Rodriguez, simply for closing an office door for technical work.
>
> 7. Sabotage: In October/November 2023, Plaintiff discovered that management (McLane/Bahlman) used administrative rights to sabotage files (the "Murano" folder) and erase technical tickets in ServiceNow to frame Plaintiff for "poor performance."
>
> 8. Retaliation: On Nov 2, 2023, Plaintiff reported a security breach. On Nov 3, 2023, she was ordered off the premises. On Nov 16, 2023, she was terminated. NTT Data confirmed the termination was because "the client [TxDOT] does not want you on campus."

*ECF No. 40* at 1–2. Examining the allegations, Martinez does not identify any adverse employment action taken against her *because of* her protected status.

"[T]o plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment." *Hamilton v. Dallas County*, 79 F.4th 494, 502-03 (5th Cir. 2023).

Liberally construing Martinez's First Amended Complaint, it appears Martinez references sex as the basis for her claims.[4] Regarding any adverse employment action, however, Martinez indicates her termination was the result of reporting a security breach. *ECF No. 40* at 2. Martinez confirms this in her Response, stating she "was terminated for reporting security breaches . . . " *ECF No. 54* at 2. While Martinez also claims "male employees were provided TxDOT transportation [and she] was forced to use her own vehicle/gas," again, Martinez fails to state this was *because of* her sex and not for some other reason. *ECF No. 40* at 1.

---

[4] Responding to TxDOT's Motion to Dismiss, on this point, asserts for the first time she was treated differently than "direct comparator" identified as "Alannah Rodriguez." *ECF No. 54* at 1–2. Martinez describes this individual as "a favored non-minority manager." *Id*. at 2. The Court notes there are no allegations of discrimination based on race in Martinez's First Amended Complaint. *ECF No. 40*.

Finally, to the extent she attempts to assert a hostile work environment claim on the basis of "homophobic slurs" Martinez does not explain, for example, how the alleged harassment affected a term, condition or privilege of her employment.[5]

For these reasons, the Court will grant TxDOT's Motion to Dismiss, (*ECF No. 52*), as to any Title VII cause of action for discrimination asserted by Martinez.

**2. Title VII Retaliation**

To state a retaliation claim under Title VII, a plaintiff must allege that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link connects the two. *Daniels v. LAZ Parking*, No. 25-50894, 2026 WL 781322, at *2 (5th Cir. Mar. 19, 2026) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

With regard to the first element, protected activity can consist of either: "(1) opposing any practice deemed an unlawful employment practice by Title VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the 'participation clause')." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998)); *see also* 42 USC § 12203(a). The participation clause is inapplicable here because Martinez does not allege she was participating in an investigation under Title VII. *See ECF No. 40*.

Therefore, the only way Martinez was engaged in a protected activity under Title VII is if she opposed discrimination based on race, color, religion, sex, or national origin. *See* 42 U.S.C. §

[5] To state a hostile work environment claim, a plaintiff must allege that (1) she belongs to a protected group; (2) she was harassed; (3) the harassment was based on a factor protected by Title VII; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to remedy it. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (citation omitted). "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (quotation omitted).

2000e-3(a). Complaints of unfair treatment that are not tied to discrimination based on a protected characteristic do not constitute protected activity. *See Brown v. United Parcel Serv., Inc.*, 406 Fed. Appx. 837, 840 (5th Cir. 2010).

Examining the allegations, the Court agrees with TxDOT that Martinez does not plausibly allege she opposed conduct made unlawful by Title VII. Regarding retaliation, Martinez includes the following sole allegation in her First Amended Complaint:

> 8. Retaliation: On Nov 2, 2023, Plaintiff reported a security breach. On Nov 3, 2023, she was ordered off the premises. On Nov 16, 2023, she was terminated. NTT Data confirmed the termination was because "the client [TxDOT] does not want you on campus."

*ECF No. 40* at 1–2. Thus, as alleged, Martinez's reporting of a security breach does not plausibly implicate any protected activity under Title VII. Martinez fails to address this deficiency in her Response. *See ECF No. 54*.

Accordingly, the Court will grant TxDOT's Motion to Dismiss, (*ECF No. 52*), on the basis of TXDOT's arguments. *E.g.*, *Perez v. City of Floresville*, No. SA-23-CV-00990-JKP, 2023 WL 8285227 (W.D. Tex. Nov. 30, 2023).

## III. Leave to Amend

Following the filing of the instant Motions to Dismiss, Martinez filed a Motion to Amend Complaint, (*ECF No. 75*). NTT and TxDOT oppose Martinez's request. *See ECF Nos. 81, 86*.

On April 1, 2026, U.S. Magistrate Judge Elizabeth S. Chestney provided Martinez the opportunity to file an amended complaint following the submission of NTT and TxDOT's initial motions to dismiss. *See ECF Nos. 21, 22, 38*. This is in line with the procedure outlined in the Court's *Standing Order in Civil Cases Assigned to Judge Jason Pulliam*, (*see ECF No. 6*).

Per the *Standing Order*, "[t]o advance the case efficiently and minimize the cost of litigation, the Court will provide parties an opportunity to amend their pleadings once before consider-

ing a Federal Rule of 12(b)(6) Motion to Dismiss." *ECF No. 6*. "Under this practice, the Plaintiff has already been provided notice of the proposed deficiencies and the opportunity to amend the pleading prior to the filing of a Motion to Dismiss. Consequently, if the Court finds any Motion to Dismiss has merit, the Plaintiff shall not be allowed an additional opportunity to amend its Complaint following a properly filed Motion to Dismiss." *Id*. (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th Cir. 2002)).

On April 7, 2026, Martinez filed her First Amended Complaint and the Court denied as moot NTT and TxDOT's initial motions to dismiss. *ECF Nos. 21, 22, 40*. NTT and TxDOT later filed the instant Motions to Dismiss, (*49, 52*), that are the subject of this Opinion.

Accordingly, on this record, Martinez has already been provided notice of the proposed deficiencies and the opportunity to amend her pleading prior to NTT and TxDOT's filing. The Court additionally reviewed Martinez's Proposed Second Amended Complaint and finds amendment would be futile as it remains deficient.[6] Therefore, Martinez's Motion to Amend Complaint, (*ECF No. 75*), will be denied.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants TxDOT and NTT's Motions to Dismiss, (*ECF Nos. 49*, *52*), **DENIES** Martinez's Motion to Amend Complaint, (*ECF No. 75*), and **DENIES AS MOOT** any other pending motions. As Martinez's causes of action have been dismissed, the Clerk of Court is therefore **DIRECTED** to close this case after entering the contemporaneously-issued Final Judgment.

---

[6] As an example, Martinez states she "was terminated and physically blacklisted from the TxDOT facility to cover-up an internal financial fraud and budget-manipulation scheme orchestrated by TxDOT Director of Operations William McLane." *ECF No. 75* at 1. This allegation still does not plausibly implicate any protected activity under Title VII. It also contradicts and undermines Martinez's additional allegations that—even under a liberal construction—her termination was based on "homophobic and sex-based animus." *Id*. at 2.

It is so ORDERED.
SIGNED this 3rd day of September, 2026.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE